# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 10-590


**SUCCESSION OF MARY LOUIDA ARCENEAUX LEFORT**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. P-31-97
HONORABLE CRAIG STEVEN GUNNELL, DISTRICT JUDGE


\*\*\*\*\*\*\*\*\*\*


## JOHN D. SAUNDERS
## JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of John D. Saunders, J. David Painter, and Shannon J. Gremillion, Judges.

### AFFIRMED AND REMANDED WITH INSTRUCTIONS.

**Glenn W Alexander**
**Attorney at Law**
**P. O. Box 1550**
**Cameron, LA 70631**
**(337) 494-5563**
**Counsel for Appellee:**
**Mary Lou Stoker Joanen**
**Ted Joanen**

**Michael Bruce Holmes**
**Attorney at Law**
**P. O. Dr. 790**
**Kinder, LA 70648**
**(337) 738-2568**
**Counsel for Appellant:**
**Ethel Marie Fontenot Sack Lefort**

**SAUNDERS, Judge.**

Herein, we address whether the trial court committed manifest error in its partitioning of the newly discovered property of the succession of Mary Louida Arceneaux Lefort. For the following reasons, we affirm the ruling of the trial court but remand the matter so that a notary may be appointed to execute the partition in accordance with La.Code. Civ.P. art. 4605.

**FACTS AND PROCEDURAL HISTORY:**

The matter before us arises out of the succession of Mary Louida Arceneaux Lefort (hereinafter referred to as "Mary Louida"). Mary Louida and Alexis Joseph Lefort, Jr. (hereinafter referred to as "Alexis") were married for thirty-nine years. Mary Lou Stoker Joanen (hereinafter referred to as "Joanen") was the daughter of Mary Louida from a previous union. Mary Louida died in 1997, and Alexis subsequently married Ethel Marie Fontenot Sacker (hereinafter referred to as "Ethel").

Mary Louida's last will and testament was probated in March of 1997, with all of her property (the entirety of Mary Louida's separate property and half of the community property owned by Mary Louida and Alexis) being left to Joanen, subject to a right of use in favor of Alexis. In the judgment of possession, however, the right of use granted to Alexis was termed a usufruct. The community property included in the judgment of possession consisted of a home located in Welsh, Louisiana, a Lincoln Towncar, a lot of household furniture, and multiple bank accounts.

In November of 2005, upon discovering that several substantial pieces of Mary Louida's property had been omitted from the 1997 succession, Joanen filed a petition to reopen the succession and for the appointment of an independent administratrix. Among the items that Joanen alleged were omitted were multiple New York Life

Company Mainstay Fund accounts that totaled $412,892.06. Joanen argued that these were community assets of Mary Louida and Alexis. She also alleged that there were several items of Mary Louida's separate property that were not included in the judgment of possession: a dinnerware set, decorative cups and saucers, a painting, a bench, a rocking chair, and a telephone table. All of this property was left to Ethel, by way of testament, after the death of Alexis in April of 2005.

Joanen filed a petition to partition the succession on April 17, 2006. Specifically, she requested that the court partition the community property of Alexis and Mary Louida that was omitted from the original judgment of possession and that it order Ethel to return the separate property of Mary Louida. Ethel filed exceptions of lis pendens, improper venue, improper cumulation of actions, and no cause of action. The exceptions were denied by the trial court.

After hearing the case, the trial court made the following findings: It found that the home in Welsh was to be put up for sale with the proceeds divided evenly between the parties. It found that the six household items (dinnerware, cups and saucers, painting, bench, rocking chair, and telephone table) were the separate property of Mary Louida and were to be returned to Joanen. It found that the New York Life accounts were opened during the marriage of Mary Louida and Alexis; thus, the accounts were community property.

Subsequent to Mary Louida's death, the accounts were transferred to other accounts bearing the names of Alexis and Ethel. After Alexis's death, Ethel mistakenly listed the accounts as having been Alexis's separate property and transferred the money into accounts bearing only her name. The trial court found that Joanen was entitled to Mary Louida's half of the accounts, $211,177.26 of the

2

$422,354.51 total. It also found that Joanen was still owed Mary Louida's half share of the checking and savings accounts held by Mary Louida and Alexis during their marriage. It awarded Joanen $10,443.50, half of the $20,887.00 total. Finally, the court awarded Joanen reimbursement for certain expenses related to the items included in Mary Louida's succession, totaling $5,931.87.

Joanen passed away on November 9, 2008, shortly after trial ended. A formal judgment of partition of succession was signed on November 16, 2008. A motion and order to substitute party was filed by Joanen's surviving husband, Ted Joanen, on December 17, 2008. Ethel then appealed the November, 16 2008, judgment, asserting that the trial court had erred in issuing a judgment in favor of a deceased person and that the judgment was an absolute nullity. This court agreed and dismissed the case without prejudice and remanded the matter back to the trial court for further appropriate proceedings and for such action as the law permits.

On January 19, 2010, the trial court rendered a new formal judgment of partition of succession in favor of Ted Joanen (hereinafter referred to as "Appellee"), otherwise identical to the initial judgment rendered in favor of Joanen. It is from this judgment that Ethel now appeals.

**APPELLANT'S ASSIGNMENTS OF ERROR:**

1. The Trial Court erred in denying Appellant's Exception of Improper Venue and Improper Cumulation of Actions.

2. The Trial Court erred in denying Appellant's Peremptory Exception of No Cause of Action.

3. The Trial Court erred in allowing Appellee to make collateral attack upon the prior Judgment of Possession that granted decedent's husband a "usufruct" over all of her property and in ruling the testament of the decedent granted only a "use" of decedent's property and not a "usufruct."

3

4.  The Trial Court erred in concluding Appellee had met her burden of proof to establish her right to partition of the succession.

5.  The Trial Court erred in concluding the home in Welsh and New York Life investment accounts were subject to partition within the succession.

6.  The Trial Court erred in determining the hand-made bench, telephone table and desert rose pattern china was the separate property of Mary Louida Arceneaux LeFort and in ordering Appellant to return these items to Appellee as part of the partition of succession.

7.  The Trial Court erred in casting Appellant in judgment in favor of Appellee for one-half the value of the New York Life investment accounts.

8.  The Trial Court erred in awarding pre-judgment interest to Appellee from the date of death of Mary Louida Arceneaux Lefort.

9.  The Trial Court erred in refusing to deem as judicial confessions Appelle's prior statements under oath concerning the assets of her mother's estate.

10. The Trial Court erred in failing to appoint a Notary Public to make the partition between the parties in accordance with law.

11. The Trial Court erred in failing to order an appraisal of the home prior to its partition by licitation.

**LAW AND DISCUSSION ON THE MERITS:**

<u>Standard of Review</u>

The standard of review to be applied by this court was set out by our supreme court in *Stobart v. State, through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993) (citations omitted) (alteration in original).

> A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." *Rosell v. ESCO*, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:
>
> > 1)  The appellate court must find from the record that a reasonable factual basis does not exist for the finding

4

of the trial court, and

> 2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

> . . . .

> This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts."

## Assignment of Error No. 1

In her first assignment of error, Ethel argues that the trial court erred in denying her exceptions of improper venue and improper cumulation of actions.

As the foundation of this claim, Ethel asserts that the action has been mislabeled as a petition to partition succession and that it would be more accurately described as three separate actions: "(1) partition of co-owned immovable (home in Welsh) between [Joanen] and Ethel; (2) possession of certain pieces of movable property alleged to be in the hands of Ethel; and (3) partition between [Joanen] and Ethel of alleged newly discovered assets of estates of Mary Louida Arceneaux LeFort."

Under this premise, Ethel argues that the action for the return of certain pieces of movable property should have been brought in Allen Parish instead of Jefferson Davis Parish. She asserts that under the general rules of venue, an action against an individual who is domiciled in the state shall be brought in the parish of his domicile. La.Code Civ.P. art 42. As Ethel is a domiciliary of Allen Parish, she argues that Allen Parish is the proper venue for this action. We find no merit in this argument.

Louisiana Code of Civil Procedure Article 3393 provides that when other

5

property is discovered, or for any other proper cause, a succession may be reopened upon the petition of any interested party.

> After formal or informal acceptance by the heirs or legatees or rendition of a judgment of possession by a court of competent jurisdiction, if other property is discovered, or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be opened or reopened, as the case may be, regardless of whether or not, theretofore, any succession proceedings had been filed in court. The court may appoint or reappoint the succession representative, if any, or may appoint another, or new, succession representative. The procedure provided by this Code, for an original administration, shall apply to the administration of successions formally or informally accepted by heirs or legatees and in successions where a judgment of possession has been rendered, in so far as same is applicable.

La.Code Civ.P. art. 3393(B).

Joanen, upon discovering property not included in the initial succession of Mary Louida, petitioned the trial court to reopen the succession in November of 2005. The property items addressed by Ethel in this assignment of error, despite being of separate categories of property, are properly part of the reopened succession of Mary Louida. As such, there was no improper cumulation of actions, and the applicable rules of venue are those for the partition of successions.

Louisiana Code of Civil Procedure Article 3461 directs that a "petition for the partition of a succession shall be filed in the succession proceeding as provided in Article 81(2)," and that "in all other respects and except where manifestly inapplicable, the procedure for partitioning a succession is governed by the provisions of Articles 4601 through 4614."

Louisiana Code of Civil Procedure Article 4603 states, in pertinent part, that, "[t]he partition proceeding shall be brought in the venue provided by Article 80(2) if the property sought to be partitioned is immovables, or both movables and

immovables."  Under

La.Code Civ.P. 80(A)(2), the action may be brought in the parish where the immovable property is situated.

Here, the immovable property is the home in Welsh.  This property is situated in Jefferson Davis Parish.  Accordingly, the action for the partition of succession was properly brought in Jefferson Davis Parish.

Assignment of Error No. 2

In this assignment or error, Ethel contends that the trial court erred in denying her exception of no cause of action.  Specifically, Ethel identifies three problems: (1) Joanen and Ethel were not co-heirs of Mary Louida; (2) there was no showing that inheritance taxes were paid or that none are owed; (3) Joanen did not allege that either Ethel or Alexis had accepted the succession of Mary Louida.

In her first complaint, Ethel argues that there is no cause of action because Joanen did not allege that she and Ethel were co-heirs, instead alleging that they were co-owners of certain property as a result of two, separate succession proceedings. Ethel contends that an action for the division of succession property lies between heirs only and only as to assets which they have not been placed in possession.  That is incorrect.

Louisiana Civil Code Article 1318 reads, in pertinent part:  "Not only the coheir himself, but the heirs of that coheir, and any other successor can compel a partition of the estate, and be themselves compelled to make it."  In the present matter, Alexis was the surviving spouse of Mary Louida.  When he died, his general legatee was Ethel.  This means that when Mary Louida died, Joanen and Alexis were

coheirs since Alexis was granted a right of use over Mary Louida' property for the duration of his life. Ethel, in turn, was Alexis's heir. Accordingly, Ethel, as the heir to the coheir of Joanen, can be compelled to make a partition of the estate under La.Civ.Code art. 1318.

In her second complaint, Ethel argues that there was no cause of action because Joanen failed to allege that inheritance taxes had been paid or that no taxes were due. Again, we find no merit in this assignment of error. As to the items that were included in the original judgment of possession of Mary Louida's succession, an inheritance tax return was filed, and a tax receipt was provided. As to the items not included in Mary Louida's original succession, it would be far removed from the interests of justice for this court to penalize Joanen for failing to include items that she had no idea existed on an inheritance tax return.

In the final complaint under this assignment of error, Ethel asserts that no cause of action existed in that there was no allegation that either Ethel or Alexis had unconditionally accepted the succession of Mary Louida. Again, this court finds no merit in the argument presented. A review of the record before us makes abundantly clear that Alexis, and then Ethel upon his death, fully accepted the succession of Mary Louida.

"In the absence of renunciation, a successor is presumed to accept succession rights." La.Civ.Code art. 962. "Acceptance may either be formal or informal. It is formal when the successor expressly accepts in writing or assumes the quality of successor in a judicial proceeding. It is informal when the successor does some act that clearly implies his intention to accept." La.Civ.Code art. 957. "An act of

8

ownership that can be done only as a successor implies acceptance, but an act that is merely administrative, custodial, or preservative does not imply acceptance." La.Civ.Code art. 959.

Ethel argues that "one cannot accept that which he was not aware existed." However, following the death of Alexis, Ethel took possession of the succession property at issue, including the household movable items and the New York Life accounts—even changing the accounts over to her name only. We find that the behavior of Alexis and Ethel amounts to an act of ownership sufficient to invoke informal acceptance of the relevant succession property. We accordingly find that the trial court was correct in denying the exception of no cause of action.

Assignment of Error No. 3

In her third assignment of error, Ethel contends that the trial court erred in allowing the Appellee to make a collateral attack upon the prior judgment of possession that granted decedent's husband a usufruct over all of her property. We disagree.

The last will and testament of Mary Louida included the following provision: "I leave unto my husband, Joseph Alexis Lefort, the use of all my property for the remainder of his life." In the Petition for Possession and Judgment of Possession filed in the original succession proceeding of Mary Louida, the attorney for Alexis used the term "usufruct" rather than "use." Accordingly, Alexis was sent into possession of one-half of the couple's community property and was given usufruct over the remaining one-half. In the proceedings related to the reopening of Mary Louida's succession, the trial court found that Alexis was only given a right of use

rather than the broader right of usufruct.

The distinction is significant in this matter in that there is both movable and immovable property at issue. Louisiana Civil Code Articles 639 and 640 dictate that a right of use is a personal servitude that confers a specified use of an estate less than full enjoyment and that it may only confer an advantage that may be established by a predial servitude. As such, the right of use only attaches to immovable property, as opposed to a usufruct, which would extend to both immovable and movable property. Of particular importance here are the New York Life accounts, bank accounts, and household furnishings, all of which fall under the class of movables.

Ethel argues that the trial court erred in reinterpreting the word "use." She cites the *Succession of McCarthy*, 583 So.2d 140, (La.App. 1 Cir. 1991), in support of her argument that a judgment of possession is final and binding on the heirs, and she notes that La.Code Civ.P. art. 2931 provides that "[a] probated testament by be annulled only by a direct action brought in the succession proceeding against the legatees, the residuary heir, if any, and the executor, if he or she has not been discharged."

There is no indication that Joanen, or the Appellee before us now, intended to annul the entirety of the probated testament of Mary Louida. Rather, it appears that the goal was to be placed in possession of the items of property omitted from the earlier proceeding and to clarify the clear language of Mary Louida's will dictating that Alexis be given the "use" of Mary Louida's property. Ethel argues that such an action can only take place in a succession proceeding against the legatees, the residuary heir, if any, and the executor. That is precisely the setting of the matter before this court. For this reason, we are unable to conclude that the trial court was

manifestly erroneous in its ruling on the issue. Accordingly, we find no merit in this assignment of error.

## Assignment of Error No. 4

In this assignment of error, Ethel argues that Joanen (and now the Appellee) failed to meet the applicable burden of proof in order to establish a right to partition the succession. In support of this assignment, Ethel reiterates the arguments set forth in "Assignment of Error No. 2." For reasons set forth therein, we find no merit in this claim.

## Assignment of Error No. 5

In her fifth assignment of error, Ethel reiterates her argument from "Assignment of Error No. 1," in which she argues that the home in Welsh has been improperly included in this partition of succession proceeding. For the reasons set forth therein, we disagree. Furthermore, as has been argued by the Appellee, even if the home in Welsh was to be classified simply as an item of immovable property owned by two parties in indivision, the remedy would be the same—partition by licitation. In the interests of judicial economy, it would be prudent to attend to the matter in the current proceeding.

Ethel next argues that the New York Life accounts cannot be partitioned because they are no longer assets of the succession. She bases this argument on the fact that the accounts were transferred to new accounts bearing Alexis's and later Ethel's names. The trial court's authority over an account does not cease to exist with the alteration of the account number or its name. If this court were to accept Ethel's argument, the door would be open in every succession containing bank or investment accounts for a party to escape accountability by altering the designations of those

accounts.

For the above stated reasons, we find no merit in this assignment of error.

Assignment of Error No. 6

In this assignment of error, Ethel argues that the trial court erred in determining that the bench, telephone table, and desert rose pattern china were the separate property of Mary Louida and in ordering Ethel to return the items to the Appellee. The trial court found as a fact that these items of movable property were the separate property of Mary Louida. There is nothing in the record indicative to this court that the trial court was clearly wrong or committed manifest error in that determination.

Regarding the china, Joanen testified as to the history of the dinnerware and how Mary Louida came into possession of it piece by piece. Margie Woodcock, the sister of Ethel, stated in her deposition that she was aware of the china since she had a full set of it herself. She also stated that although Ethel had some pieces of the same pattern, she did not have a complete set at the time of Alexis's death.

Regarding the bench, Ethel contends that it was given to her by Alexis as a birthday gift. Joanen testified at trial that the bench originally belonged to her grandmother and, later, Mary Louida. She produced an old photograph showing her grandmother along with the same bench.

Regarding the telephone table, Joanen testified as to its history and stated that it was purchased by Mary Louida in 1950 or 1951. Ethel has produced no evidence to suggest otherwise—only stating that it was left by Joanen at the home in Welsh after she had removed most of her furniture.

As stated above, there is nothing in the record that would suggest that the trial court committed manifest error in its ruling on these items of movable

12

property—particularly in light of the photographs and history provided by Joanen at trial. Accordingly, we find no merit in this assignment of error.

## Assignments of Error Nos. 7 & 8

In these assignments of error, Ethel argues that the trial court erred in casting judgment in favor of the Appellee for one-half the value of the New York Life investments accounts and in awarding legal interest to the Appellee running from the date of Mary Louida's death.

Ethel again contends that the trial court no longer held any authority over the New York Life accounts once they were switched over to Alexis', and then Ethel's, names. For the reasons discussed in "Assignment of Error No. 5," this court finds no merit in that argument.

Ethel further argues that if any legal interest was due to the Appellee, it should have run from the time of Alexis' death—not from the death of Mary Louida—since Alexis was granted usufruct over all of Mary Louida's property, including the New York Life accounts. This is not the case. Again, as was discussed above in "Assignment of Error No. 3," the benefit conferred to Alexis in the last will and testament of Mary Louida was a right of use, not the broader right of usufruct. As a right of use can only confer an advantage that may be established by a predial servitude, the benefit does not extend to movable property such as the New York Life accounts. Accordingly, we find that the trial court was correct in calculating legal interest from the date of Mary Louida's death.

## Assignment of Error No. 9

In this assignment of error, Ethel contends that Joanen's signature on the sworn estimative list prepared for Mary Louida's succession amounts to a judicial

13

confession estopping her from claiming any additional assets belonging to the succession. We disagree, as such an argument runs afoul of the purpose of La.Code Civ.P. art. 3393(B).

Louisiana Civil Code Article 1853 defines a judicial confession as "a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact."

Louisiana Code of Civil Procedure Article 3393(B) allows *any interested party*, after the discovery of other property or for any other proper cause, to reopen a succession.

As the general legatee of Mary Louida's succession, Joanen was precisely the party that Article 3393(B) intended to protect in the instance before this court where other property allegedly belonging to Mary Louida's succession has been discovered. Furthermore, in signing the sworn estimative list, Joanen was merely certifying that the items of property included on the list were owned by Mary Louida at the time of her death. The action instituted by Joanen to recover any unknown assets properly belonging in Mary Louida's succession does not amount to a revocation of a judicial confession made in signing the sworn estimative list. Rather, it is an action taken by an interested party, as the general legatee of the decedent, to exercise the rights provided by La.Code Civ.P. art. 3393(B).

For these reasons, we find no merit in this assignment of error.

Assignments of Error Nos. 10 & 11

In her final assignments of error, Ethel argues that the trial court erred in failing to appoint a notary to partition the property and in failing to direct that the property

14

be appraised prior to sale.

In support of her argument that an appraisal is required prior to the sale of the succession property, Ethel cites La.Code Civ.P. arts. 4607 and 2331-2332. Article 4607 directs that "when a partition is to be made by licitation, the sale shall be conducted at public auction and after the advertisements required for judicial sales under execution." The article, however, does not call for an appraisal. Articles 2331 & 2332 address the sale of property under a writ of fieri facias. These articles concern property that has been seized and sold to satisfy a debt. Although they do call for an appraisal, the intention behind the requirement is to assure that the judgment debtor receives a certain minimum value for the property to satisfy the debt. Here, the proceeds of the sale are being divided equally between the parties, and the property must be sold regardless of the appraised value. As such, no appraisal is needed.

Regarding Ethel's second contention, that the trial court erred in not appointing a notary, she cites La.Code Civ.P. art. 4605, which reads as follows:

> A partition proceeding shall be tried with preference over other ordinary proceedings.
>
> After the trial of the proceeding, if the court finds that the plaintiff is entitled to a partition of the property, *the court shall appoint a notary to make the partition in accordance with law*.
>
> Except as otherwise provided in Article 4606, the court has discretion to direct the manner and conditions of effecting the partition, so that it will be most advantageous and convenient to the parties.

(Emphasis added).

Article 4605 is clear in its mandate that a notary must be appointed by the court, and we agree with Ethel that the trial court erred in failing to do so. Accordingly, we remand the matter back to the trial court so that the proper procedure

15

may be followed in accordance with La.Code. Civ.P. art. 4605.

**CONCLUSION:**

For the foregoing reasons, we affirm the judgment of the trial court on all issues except its failure to appoint a notary to make the partition of the property as mandated by law. Accordingly, the matter is remanded so that the proper procedure may be followed in accordance with La.Code Civ.P. art. 4605. All costs of this appeal shall be assessed to the Appellant, Ethel Marie Fontenot Sacker.

**AFFIRMED AND REMANDED WITH INSTRUCTIONS.**